SOLOMON W. RUNDELL, Respondent, v. FRANKLIN LAKEY and ALLEN GOLDSMITH, Appellants.

Where, previous to a conveyance with warranty, an assessment has been completed, assessing to the vendors the property conveyed, and subsequently, while the purchaser is in possession under his conveyance the tax is laid by the board of supervisors, upon the premises under such assessment—*Held* (LOTT, J., dissenting), that upon an agreement between the parties, by which the vendee paid the tax but was to be repaid by the vendors, "in case they were legally liable to pay it," the former can maintain an action against the latter for the amount.

As between them, the vendors, independent of any agreement, were liable to pay the tax under their covenant of warranty in the deed, if the vendee had been compelled to pay to save his land. HUNT, Ch. J., MASON and JAMES, JJ.

At least, it could have been collected by the collector from the vendors, and they, therefore, and not the vendee, were liable to pay it within the meaning of the agreement.
GROVER and DANIELS, JJ.

(Submitted April 5th, 1869, and decided June 14th, 1869.)

APPEAL from a judgment of the Supreme Court at General Term, in the seventh district, affirming an affirmance by the Wayne County Court, of a judgment of a justice of the peace, in favor of the plaintiff.

The action was to recover the amount of a certain tax assessed against the defendants, in the town of Manchester, Ontario county, and paid by the plaintiff, at the request of the defendants, and under the agreement that they would refund the amount to him, "in case they were legally liable to pay it," upon the facts stated below; otherwise, not

The following facts were agreed upon at the trial: On and prior to the 1st of September, 1860, the defendants were owners of a farm, in the said town of Manchester. On that day they sold and conveyed it to the plaintiff by deed, with only the usual covenant, that the premises thus conveyed in the quiet and peaceable possession of the plaintiff, his heirs and assigns, they would forever warrant and defend. The plaintiff immediately went into possession. The county and

State taxes for that year upon the farm had been assessed to the defendants; the assessment roll was completed within the time prescribed by statute (August 1st). The annual meeting of the supervisors of the county was held in November, 1860, when the tax in question was extended upon the roll. On the 14th of February, 1861, the collector of the town called upon the plaintiff for the tax, and he then paid it, upon the agreement with the defendants, mentioned above.

*George F. Danforth*, for the appellants, cited *Kern* v. *Towsley* (45 Barbour, 150); *Maurice* v. *Weller* (26 Barbour, 44); *Long* v. *Mblee* (5 Ohio St. R. N. S., 251); *Whitney* v. *Thomas* (25 N. Y., 285); *Mygatt* v. *Washburn* (15 N. Y., 316); *Shaw* v. *Peckett* (26 Vermont, 482); *Thompson* v. *Gardner* (10 Johns., 404.)

*Henry R. Selden*, for the respondent, cited, upon the questions discussed in the opinion, 1 R. S., 389, § 1; 393, §§ 19, 20, 21, 27; Sess. Laws, 1857, Vol. 2, p. 122, § 2; Sess. Laws, 1851, pp. 333, 334, §§ 4, 5, 6, 8; Sess. Laws, 1857, Vol. 2, p. 123, § 5; 1 R. S., 395, § 33; 396, § 37; 397, §§ 1, 2; *Wheeler* v. *Mills* (40 Barb., 646); *Whitney* v. *Thomas* (23 N. Y., 283, 284); Laws of 1850, chap. 298, § 5; *Hutchins* v. *Moody* (30 Verm., 657); 15 N. Y., 319, 320; *Doe, ex dem. Gledney* v. *Deavors* (8 Georgia, 479); Blackwell's Tax Titles, pp. 646 to 650, note; 10 Johns., 361; 8 T. R., 310, 311; Id., 613; Add. on Contr., 228; Story on Contr., §§ 473, 475; Parsons on Mercantile Law, chap. 3, § 7, p. 39.

GROVER, J. The real question designed to be submitted for determination by the facts agreed upon before the justice, was as to which of the parties was legally liable for the payment of the tax as between themselves. For the purpose of facilitating the determination of this question, the defendant requested the plaintiff to pay the tax to the collector, and promised to repay him the amount in case they were legally liable to pay the same. It is argued by the counsel for the appellants, that the tax not having been laid by the board of

supervisors at the time the land was sold and conveyed by the defendants to the plaintiff, with a covenant of quiet enjoyment, it constituted no lien upon the land at that time, nor until such tax was imposed by the board about two months after the conveyance ; and further that the tax was imposed upon the land and not upon the person of the owner ; and consequently that the plaintiff being the owner of the land when the tax was imposed thereon by the board, the law makes him liable for its payment instead of the defendants, to whom the land was assessed as owners by the assessors of the town, although they continued such owners until after the completion and delivery of the roll by the assessors pursuant to the statute.    Sections 1, 2, 3 and 4, 1 R. S., page 378, show that the collector was not only authorized, but that it was his duty to collect the tax if not otherwise paid, by seizing and selling the goods of the defendants or any goods in their possession, with certain exceptions.    In case the defendants, being thus primarily liable, had paid the tax or it had been collected by the collector by sale of their property, could the defendants have recovered the amount from the plaintiffs ?    If they could, then the plaintiff, being liable for the payment, he cannot recover in this action.    If they could not, it would seem to follow that the plaintiff was not liable, but that the defendants were.    Section one, page 377, 1 R. S., declares that all lands and all personal estate within the State, whether owned by individuals or by corporations, shall be liable to taxation, subject to certain specified exemptions.    Section 1, page 389, id., provides that every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him in such town or ward, and occupied by him or wholly unoccupied.    Unoccupied lands, not owned by a resident of the town or ward, are to be assessed in a different manner. Section 4, id.    Section 5 provides that every person shall be assessed in the town or ward where he resides, when the assessment is made for all personal estate owned by him, &c. Article 2d, page 390, id., prescribes the manner in which

assessments are to be made and the duties of the assessors in making them. The several sections of this article constitute a complete system for ascertaining the persons and property subject to taxation; and also the proportion that each is liable to contribute to the payment of the sums required to be raised by taxation for the current year. By section 8, the assessors are required between the 1st days of May and July in each year, to ascertain by diligent inquiry the names of all taxable inhabitants in their respective towns or wards; and also all the taxable property, real or personal, within the same. Section 9 provides that the assessors shall prepare a roll in which they shall set down in four separate columns, in the first, the names of all the taxable inhabitants of the town or ward; in the second, the quantity of land to be taxed to each person; in the third the value of such land; in the fourth the value of personal property taxable to such individuals. Section 11, and subsequent sections, provide for the assessment of lands owned by non-residents of the town or ward. It will be seen that the latter are not to be assessed to the owner, but are only to be described and valued. This roll is to be completed as required by the assessors, and, except in the city of New York and a few other cities, to be delivered to the supervisors of the town or ward, on or before the 1st day of September. This roll constitutes the basis upon which the tax is imposed by the board of supervisors. After its completion and delivery, there is no power to alter or change it. It is conclusive as to the persons and property for apportioning the sums to be raised by taxation. If a person owns personal property and is assessed therefor upon this roll, and should by any means lose it the day after the completion and delivery of the roll, he is, nevertheless, liable to taxation upon the assessment. If assessed for real estate, the principal value of which consists of buildings, and the latter are destroyed, the liability to taxation is not thereby affected. It is, I think, apparent from the various provisions of the statute, that in respect to both real and personal property owned by a resi-

dent of the town or ward where the former is situate, that
the tax is imposed upon the person of such owner on account
of the ownership of such property, and his liability to such
tax is conclusively fixed by the completion and delivery of
the roll. The counsel for the appellants concedes that this
is true as to personal property. I can see no substantial rea-
son for a distinction between an assessment for real or per-
sonal property against an individual. Both are alike assessed
to the owner. The tax is in both cases imposed upon the
owner. Provision is made in both for the collection of the
tax from the property of the owner by the collector of the
town or ward. True, there are different provisions for
enforcing payment in case of the failure of the collector to
collect. But it is manifest that this difference has its origin
in the nature of the property and the consequent facilities
of coercing payment, rather than in any difference as to the
person or object subject to the tax. It follows, that at the
time of the conveyance of the farm by the defendants to the
plaintiff, the former, in consequence of their ownership, had
become liable for the payment of the tax for the current
year. That the time when they so became liable, was the
time of the completion and delivery of the roll, although the
amount of the tax was not ascertained and fixed for some
two months afterwards, yet the foundation of the liability
was complete. They owned the property at the time fixed
by law for determining who should be taxed therefor as owner.
True, if the tax had not been paid, the land might have been
subsequently sold to satisfy it. But this would have been a
sale to satisfy a liability of the former owner, which he had
failed to discharge, and which the law makes a lien upon the
land to prevent the loss of the tax to the public. There was
no agreement by the plaintiff to pay the tax, and he was no
more liable therefor than for the payment of any claim against
his grantors which was secured upon the land. The facts
admitted, show that the defendants cultivated the farm the
year it was assessed to them and in which they conveyed to
the plaintiff; that defendant, Lakey, did not reside in Man-

chester, where the land was situated, but in another county. It is now insisted that, being a non-resident of the town, the assessors had no power to assess him as owner, and that he was not, therefore, liable, legally, for the tax. It is not necessary to determine this question, as it was not raised before the justice. Had a motion for a nonsuit been made before the justice as to this defendant, upon this ground, further evidence might have been given to obviate the objection. We have already seen that the real and only question between the parties was, whether the plaintiff was liable for the payment of the tax, being owner at the time it was imposed by the board of supervisors, or whether the defendant, being owner at the time of the completion of the roll by the assessors were liable. The latter being held liable, the application of the rule that an objection which might have been obviated, shall, if not made, be deemed to have been waived is peculiarly appropriate in this case. The judgment of the Supreme Court affirming that of the County Court and justice in favor of the plaintiff should be affirmed with costs.

HUNT, Ch. J., MASON and JAMES, JJ., were for affirmance on the ground that the vendors were legally liable, as between themselves and the vendee, to pay the tax, independently of the agreement, under their covenant in the deed.

DANIELS, J., was for affirmance simply upon the ground that the tax could have been collected by the collector from the vendors, and under their agreement, therefore, to refund " if they were liable to pay it," the action could be maintained.

LOTT, J., was for reversal on the ground the tax was no lien until laid by the supervisors, which was after the conveyance.

WOODRUFF, J., did not vote.

Judgment affirmed.