## FANNIE M. CRUGER v. WILLIAM GINNUTH.

### (No. 3608.)

APPEAL from McLennan County.  Opinion by HURT, J.

*(Transferred from Austin.)*

ALEXANDER & WINTER, counsel for appellant.

CLARK & DYER, counsel for appellee.

§ 24. *Taxes; state and county; when lien for, attaches; case stated.*  On January 1, 1882, appellant owned certain real estate in the city of Houston, Texas.  On March 22, following, she sold and conveyed the same to R. Colter, T. J. Boyles and appellee.  Subsequently, September 14, 1882, Colter and Boyles sold and conveyed their interest in the property to appellee Ginnuth.  On July 1, 1882, Colter, Boyles and Ginnuth rendered the property for taxation for the year 1882, the assessment being against, or in the name of, their vendor, Fannie M. Cruger.  On June 1, 1883, appellee Ginnuth paid the taxes so assessed for the year 1882, state, county and city — the state and county taxes being $97.50, and the city tax being $300.  He then brought this suit to recover of appellant the taxes so paid, and recovered judgment therefor.  *Held:* The question presented is, Were the claims of the state, county and city for the taxes of 1882 incumbrances upon the land?  The constitution provides that, "The annual assessment made upon landed property shall be a special lien thereon, and all property, both real and personal, belonging to any delinquent tax payer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent." [Art. 8, sec. 15.]  At the date of the conveyance made by appellant, the law in force provided as

follows: "There shall be levied and collected an annual direct *ad valorem* state tax of four-tenths of one per centum of the cash value thereof, . . . on all real property situated . . . in this state on the 1st day of January of each and every year." [Gen. Laws of 1881, p. 53.] "All property shall be listed for taxation between January 1st and June 1st of each year, when required by the assessor, with reference to the quantity held or owned on the 1st day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the 1st day of January shall be listed by or for the person purchasing or acquiring it." [R. S. 4674.] "The collector of taxes of each county shall begin the collection of the taxes on the 1st day of October. . . ." [R. S. art. 4739.] Under further provisions the tax roll is not completed, nor the value of the property listed finally determined, until after the second Monday in June, and real estate cannot be seized and sold for unpaid taxes due thereon until March following. Unquestionably under the provisions of the laws cited, appellant, being the owner of the land on the 1st day of January, 1882, was liable personally for the taxes thereon for that year, though the amount of such taxes was to be subsequently ascertained, and though collection could not be made thereof before October; for the law expressly provides that the taxes shall be charges against the person owning the property on January 1st. From this it follows that appellee Ginnuth was not liable personally for the said taxes, he not having become the owner of the land until after January 1, 1882. This being true, we think the lien provided by the constitution attaches at the time the liability is fixed by the statute, and is an incumbrance upon the land, though the amount of the taxes is not then fixed and determined. The case of Harrington v. Hilliard, 27 Mich. 271, is seemingly in conflict with the rule here announced, but it is to be observed that the statute upon which that decision was made is essentially different from ours. The case of

Rundell v. Lakey, 40 N. Y. 517, seems more in point. In that case Grover, J., said: "It follows that at the time of the conveyance of the farm by the defendants to the plaintiff, the former, in consequence of their ownership, had become liable for the payment of the tax for the current year. That the time when they became so liable was the time of the completion and delivery of the rolls, although the amount of the tax was not ascertained and fixed for two months, yet the foundation of the liability was complete. They owned the property at the time fixed by law for determining who should be taxed therefor as owner. True, if the tax had not been paid, the land might have been sold to satisfy it. But this would have been a sale to satisfy a liability of the former owner, which he had failed to discharge, and which the law makes a lien upon the land to prevent the loss of the tax to the public."

Under our system the tax is levied on the 1st day of January of each year, and the assessment is made as of that date, although the rendering or listing and valuation of the property is in fact subsequently made. The evidence in this case shows that the state and county taxes were an incumbrance upon the land when conveyed by appellant.

§ 25. *City taxes; when an incumbrance upon land; ordinance of city must be alleged and proved.* The charter of the city of Houston is a special act of the legislature, required by its terms to be taken judicial notice of by the courts, makes all city taxes levied and assessed upon real estate within the corporate limits a lien upon said property, and the city council is given full power to make such rules and regulations and pass such ordinances as it shall deem necessary to the levying, imposing and assessing such taxes. But we fail to find in the charter any provision fixing the date when such taxes shall be levied and assessed, as is the case with regard to the state and county taxes. [Special Laws, 1879, p. 13.] It may be that, in fact, the system of taxation for the city

of Houston, as established by the rules, regulations and ordinances of said city, is, in all respects, similar to that in relation to state and county taxes, but this is not evidenced by anything in the charter, or in any general law, and, like any other fact, must be proved by competent evidence. The admission that the city taxes for 1882 were duly and regularly assessed upon the property does not furnish such proof. If it be shown that, under the city ordinances, the tax upon real property in the city is levied and assessed as of the 1st day of January, and thereby made a charge upon the property at that date, then the charter makes such charge a lien and incumbrance upon the property from said date.

§ 26. *Warranty against incumbrances.* It is alleged in the petition that the defendant Cruger did warrant and covenant with plaintiff, by her conveyance, that the property conveyed was free of all incumbrances in the way of taxes. This allegation was sustained by the introduction of said conveyance, which contained the words "grant" and "convey," and conveyed a fee-simple title. This implied the covenant that at the date of the conveyance the land was free from incumbrances. [R. S. art. 557.]

§ 27. *Variance in description of land held immaterial.* In the deed from appellant to Colter, Boyles and Ginnuth, the land is described as lot 5, block 44, giving metes and bounds. In the deed from Colter and Boyles to Ginnuth it is described as lot 5, block 45, and it is recited in the deed that the property is the same conveyed to them and Ginnuth by appellant. *Held:* This variance is immaterial, the land being otherwise fully identified. Because the evidence does not support the judgment as to the city tax, the judgment is reversed.

November 11, 1885.     Reversed and remanded.