MANDEL v. WESCHLER.

(Supreme Court, Appellate Division, First Department. November 6, 1908.)

1. WATERS AND WATER COURSES (§ 203*) — PUBLIC WATER SUPPLY — WATER RENTS—LIEN.

Under section 283 of an ordinance of the city of New York, providing that all water rents shall be paid in advance on applying for the water and before any permit is issued, to be calculated up to the 1st day of May succeeding, water rents did not become a lien on new buildings before application for water was made and a permit was issued.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

2. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—TIME OF APPLICATION—EVIDENCE.

On the issues as to when tenement houses sold by plaintiff were actually finished, and whether water had been turned on prior to the closing of title on August 14th, plaintiff's testimony that he never applied for water supply was not overcome by or in conflict with proof that on August 10th the tenement house department issued certificates that the buildings conformed to the tenement house act (Laws 1901, p. 889, c. 334); it appearing that the buildings were then unoccupied.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

3. WATERS AND WATER COURSES (§ 203*) — PUBLIC WATER SUPPLY — WATER RENTS—LIEN—TIME WHEN LIEN ATTACHES.

Greater New York Charter (Laws 1901, p. 207, c. 466) § 469, gives the commissioner of water supply, etc., control over the collection of all revenues from the sale of water, but does not empower him to determine when the water charges become a lien on the property. He may make the charge, and then collect, and if the charge be a proper one, under Laws 1901, p. 210, c. 466, § 473, the same then becomes a lien, and under Laws 1901, p. 432, c. 466, § 1017, so continues until paid. *Held* that, irrespective of when water was actually turned on, there was no lien on the premises until the amount had been determined and an actual entry made in the proper book.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

Appeal from Trial Term.

Action by Samuel Mandel against J. Charles Weschler. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

----

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. Charles Weschler, for appellant.
Louis Manheim, for respondent.

McLAUGHLIN, J. On the 14th of August, 1906, plaintiff, pursuant to a contract, conveyed to certain parties five lots upon which tenement houses had just been erected. On the same day he deposited with the defendant $975, under an agreement that if the regular Croton water rents for the year 1906—that is, the period ending April 30, 1907—were, on the 13th day of August, 1906, a lien against the premises conveyed, the defendant should pay the said rents out of the money thus deposited and return the surplus, if any, to the plaintiff; but, if the rents were not a lien on that day, then the defendant should, on demand, return to the plaintiff the whole amount deposited. The plaintiff thereafter demanded that the whole amount be returned to him, which was refused, and thereupon this action was brought to recover the same. At the conclusion of the trial, both sides moved for the direction of a verdict. The plaintiff's motion was granted, and a verdict directed in his favor for the full amount, with interest; and from the judgment entered thereon and from an order denying a motion for a new trial, defendant appeals.

The sole question presented is whether the Croton water rents were a lien against the premises on the 13th of August, 1906. The record of the department of water supply, in so far as the same affects the premises, was put in evidence, and it shows that on the 17th of August, 1906, charges for nine months—that is, from August 1, 1906, to May 1, 1907—were for the first time entered against the premises. These charges amounted in all to $625.50, and were paid on the 18th of October following by the defendant, who admits that the balance of the amount deposited with him ($349.50) is due to the plaintiff. The appellant contends that the water rents were, at the time the money was deposited, a lien, basing his contention upon an ordinance of the city of New York (section 283), certain provisions of the Greater New York Charter (Laws 1901, pp. 210, 432, c. 466, §§ 473, 1017), and a provision of the tenement house act (sections 104, 123, c. 334, pp. 913, 916, Laws 1901).

The section of the ordinance referred to provides, among other things, that:

"All rents for the use of the water shall be paid in advance at the time of applying for the water and before any permit is issued, to be calculated up to the 1st day of May succeeding; and all the rents shall continue to be collected in advance on the 1st day of May annually so long as the contract exists."

Under this ordinance I do not see how it could be claimed that the rents were a lien, because so far as appears no application for water for the new buildings had been made and no permit had been issued up to the time the title was passed. The buildings were vacant, and at that time required no water supply.

Section 469 of the charter (Laws 1901, p. 207, c. 466) gives the commissioner of water supply, gas, and electricity control over the collection of all revenues from the sale or use of water. But it no-

where gives him power to determine when the water charges made by him become a lien upon the property against which the same is charged. He has the right to make the charge and then collect, and if the charge be a proper one, under section 473 the same then becomes a lien, and under section 1017 so continues until the charge is paid.

The provisions of the tenement house act referred to have no application. Section 104 simply provides that every tenement house shall have water furnished in sufficient quantity at one or more places on each floor occupied by or intended to be occupied by one or more families; and section 123, that if any building hereafter constructed as or altered into a tenement house be occupied in whole or in part for human habitation, in violation of a previous section, then the department of water supply shall not permit water to be furnished in such tenement house. These provisions and others of the tenement house act are designed solely to regulate the construction, equipment, and maintenance of tenement houses, and have no relation to water rents, either what shall be charged or when the same become a lien.

As to when the houses were actually finished, and whether the water had been turned on prior to the closing of title on the 14th of August, the evidence is conflicting. The plaintiff testified that he had never made any application for water supply; but it is suggested that he must have done so, as otherwise he could not have obtained the certificates from the tenement house department which were issued August 10th. The certificates were simply to the effect that the buildings conform "to the requirements of the tenement house act." They do not overcome the plaintiff's testimony, nor are they in conflict with it, if it be true that the buildings were then unoccupied; and that fact is not disputed.

But, irrespective of the question when the water was actually turned on, there could be no lien until the amount had been determined and an actual entry made in the proper book. It has been uniformly held, in cases involving the question as to when a tax becomes a lien, that it is only when the amount thereof is ascertained and determined. Harper v. Dowdney, 113 N. Y. 644, 21 N. E. 63; Lathers v. Keogh, 109 N. Y. 583, 17 N. E. 131; Village of Upper Nyack v. Jewett, 86 App. Div. 254, 83 N. Y. Supp. 838, affirmed 181 N. Y. 514, 73 N. E. 1133; Burr v. Palmer, 53 App. Div. 358, 65 N. Y. Supp. 1056.

The same rule is here applicable. The lien did not exist until the charge had been determined and entered upon the books of the department, on the 17th of August. The court, therefore, properly directed a verdict for the plaintiff for the full amount deposited, with interest.

The judgment and order appealed from are affirmed, with costs. All concur.